IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOSHUA SCOLMAN,

               Plaintiff,

   v.

BRIAN FOSTER, et al.,

               Defendants.

OPINION and ORDER

Case No.  17-cv-54-wmc

Under 42 U.S.C. § 1983, *pro se* plaintiff Joshua Scolman was previously granted leave to proceed on his claim that certain employees of Waupun Correctional Institution ("Waupun") violated the First Amendment by the prolonged confiscation of his legal materials and a retaliatory refusal to transfer him to another institution.  Now before the court is defendants' motion for partial summary judgment on exhaustion grounds.  (Dkt. #20.)  In particular, defendants seek judgment in their favor as to plaintiff's retaliation claims on the ground that he failed to exhaust his administrative remedies before bringing suit.  For the reasons that follow, the court will grant the motion and dismiss plaintiff's retaliation claims without prejudice.

OPINION

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Generally, a prisoner also must "properly take each step within

the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following the institution's "administrative rules," *id*., that are "in the place . . . at the time, *id*., for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), *and* all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006); *see Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement"). If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Under Waupun's regulations applicable in 2016, prisoners were required to start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). After filing the complaint, prisoners were to receive acknowledgment of its receipt within five working days. *Id.* § 310.11(2). Each complaint must "[c]ontain only one issue, which must be clearly identif[ied]." *Id.* § 310.09(e). If the institution complaint examiner ("ICE") rejected a grievance for procedural reasons without addressing the merits, an inmate could appeal the rejection to the appropriate reviewing

authority.  *Id.* §§ 310.11(6), 310.10(10).  The reviewing authority's decision on such an appeal was final.  *Id.* § 310.10(10).

If the complaint was not rejected, the institution examiner was to make a recommendation to the reviewing authority as to how the complaint should be resolved.  *Id.* § 310.11(6).  The offender complaint was then to be decided by the appropriate reviewing authority, whose decision could be appealed by the inmate to a correctional complaint examiner ("CCE" or "corrections examiner").  *Id.* §§ 310.12, 310.13.

Generally, prisoners were required to appeal a reviewing authority's decision within "10 calendar days." Wis. Admin. Code § DOC 310.13(1), although "[u]pon good cause, the CCE may accept for review an appeal filed later than 10 days after receipt of the decision."  *Id.* § 310.13(2).  The corrections examiner then made a recommendation to the Secretary of the Department of Corrections, who took final action.  *Id.* §§ 310.13, 310.14.

Here, plaintiff Scolman filed one inmate complaint about his denied request for a transfer, WCI-2016-7933, in which claimed that he was subjected to "various retaliatory acts" because of his alleged assault of Sergeant Price.  (Ex. 101 (Davidson Decl. Ex. 101 (dkt. #23-2) 8-10.)  Scolman further claimed that:  his legal materials were being withheld; his requests and inmate complaints were disappearing; he was being shackled and handcuffed too tightly; and he was enduring "aggressive" behavior from staff.  Plaintiff also claimed that his repeated transfer requests were being ignored.  However, plaintiff did not allege that he was being retaliated against for engaging in any constitutionally protected activity.

On June 2, 2016, WCI-2016-7933 was rejected on the ground that Scolman did not provide examples of retaliatory acts by staff and, instead, complained that he should have been transferred because he was found guilty of assaulting staff.  (*Id.* at 2.)  Scolman appealed that rejection, and on June 19, 2016, Warden Brian Foster affirmed the rejection decision.

Given this history, defendants argue that plaintiff did not exhaust his administrative remedies with respect to his retaliation claim through WCI-2016-7933.  In particular, while plaintiff may have alluded to a belief that various staff were retaliating against him, he made *no* mention of staff punishing him for engaging in constitutionally protected activity.  To afford prison officials the chance to investigate that claim, plaintiff would have needed to identify *both* the protected conduct that caused the retaliation *and* the retaliatory act.  *See Lockett v. Goff*, No. 17-cv-93-jdp, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017); *Wine v. Pollard*, No. 08-cv-173-bbc, 2008 WL 4379236, at *3 (W.D. Wis. Sept. 23, 2008).  Plaintiff's failure to allege that defendants refused to transfer him *because* he engaged in constitutionally protected activity prevented the prison officials from investigating defendants' intent in declining to transfer him and, therefore, he failed to exhaust his administrative remedies with respect to that claim.

Plaintiff's arguments in opposition do not save his retaliation claims from dismissal. First, plaintiff claims that he filed "numerous" complaints related to defendants' refusal to transfer him, but they were lost because of other retaliatory acts of unidentified prison staff.  However, plaintiff fails to provide any details about these supposed complaints, including what he alleged, when he attempted to submit them, whether he followed up to

make sure that his complaints would be processed through the ICRS, and to whom he appealed.  A similar deficiency was addressed by the Seventh Circuit Court of Appeals in *Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019).  Similar to plaintiff, Lockett claimed he had filed an appeal, even though there was no record of it.  The Seventh Circuit held that the plaintiff's failure to follow up to make sure his allegedly lost appeal had been processed was itself a failure to follow the required administrative procedures.  *Id.* at 1026.  Specifically, the court pointed out that Wisconsin's procedures provided that if an inmate had not received a receipt acknowledging his appeal, or an answer to his appeal within 45 of receiving that receipt, the procedures provided that he could deem the appeal denied and initiate suit in the district court.  *Id.* at 1026.  Thus, the court concluded, Lockett was responsible for following up after he did not receive a receipt of his appeal, and he could not defeat summary judgment with a "bald assertion" that he submitted a timely appeal. *Id.*

Plaintiff's failure to follow up on his allegedly "lost" complaint of retaliation falls into the same category.  If he had attempted to file inmate complaints, plaintiff should have received acknowledgment of receipt within five working days.  Wis. Admin. Code § DOC 310.11(2).  While plaintiff claims that he *did* follow up on his lost complaint, and references lost inmate complaints in WCI-2016-7933, his evidence in support remains overly vague.  For example, plaintiff now declares that between March 15 and June 16, 2016, he filed "numerous" inmate complaints regarding retaliation and denial of transfer, and he submitted them through the door of the segregation unit at Waupun.  (Scolman Decl. (dkt. # 26) ¶¶ 3-4.)  Plaintiff further declares that he complained about various forms

5

of retaliation, including the refusal to transfer him, all due to his current lawsuit, and that he followed up by writing the warden, security director, administrative captain, restrictive housing supervisor and the DOC's administrator inquiring about what was happening with his complaints. (*Id.* ¶¶ 7, 8.) However, plaintiff again provides no details about *when* he tried to submit those inmate complaints, much less the substance of them.

Even more problematic, plaintiff fails to address his actual ICRS history, which shows he submitted *nine* inmate complaints between March 15 and June 8, 2016 -- the same timeframe he claims his efforts to grieve his retaliation claim were thwarted. (*See* Ex. 100 (dkt. #23-1) 1.) With the exception of WCI-2016-7933, discussed above, *none* of those inmate complaints alleged that defendants refused to transfer him as punishment for filing a lawsuit. Furthermore, plaintiff submitted an *additional* five inmate complaints in April 2016 that were returned to him, but none of those complaints alleged that defendants refused a transfer to punish him for filing a lawsuit. (*See* Ex 102 (dkt. #28-2) & Ex. 105 (dkt. #28-5) 2 (both complaining that his legal paperwork was being withheld); Ex. 104 (dkt. #28-4) and Ex. 107 (dkt. #28-7) (complaining about treatment after he allegedly assaulted staff); and Ex. 106 (dkt. #28-6) and Ex. 103 (dkt. #28-3) (alleging that staff was racist against whites)).

Accordingly, Scolman has failed to raise a genuine dispute of fact related to whether he submitted (or was denied the ability to submit) an inmate complaint related to defendants' allegedly retaliatory refusal to transfer him to another institution based on his exercise of a constitutionally protected activity. Accordingly, the court will grant defendants' motion for partial summary judgment and dismiss Scolman's First Amendment

retaliation claims in this lawsuit without prejudice.

ORDER

IT IS ORDERED that:

1.  Defendants' motion for partial summary judgment on exhaustion grounds (dkt. #20) is GRANTED.

2.  Plaintiff Joshua Scolman's First Amendment retaliation claims against defendants Foster, Meli and Ludvigson are dismissed without prejudice.

Entered this 28th day of April, 2020.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge